FARMERS' ETC. N. BANK v. D. W. BRADEN ET AL.
FARMERS' ETC. N. BANK v. W. T. LANTZ ET AL.

APPEALS BY DEFENDANTS FROM THE COURT OF COMMON PLEAS
OF GREENE COUNTY.

Argued October 9, 1891—Decided November 9, 1891.

(*a*) One who was a director and also an officer of a bank, having over-
drawn his account with the bank, procured certain persons to become
sureties on his note. The note was then discounted by the bank in the
usual course of business, and the proceeds of it used in making good
the overdrafts:
1. The bank was not bound to communicate to the sureties the state of
the principal's accounts, or his financial condition if known. The bank
and the principal, however, supposing at the time that the latter was
solvent, and nothing being done by the bank to deceive the sureties, they
could not resist payment, though in fact the principal was insolvent.

Before PAXSON, C. J., STERRETT, CLARK, WILLIAMS, MC-
COLLUM and MITCHELL, JJ.

Nos. 142, 150, 151 October Term 1891, Sup. Ct.; court be-
low, Nos. 164, 328 January Term 1890; No. 105 April Term
1890, C. P.

On November 27, 1889, judgment was entered in the court
below, by the prothonotary, to No. 164 January Term 1890, in
favor of the Farmers' and Drovers' National Bank of Waynes-
burg, against Daniel W. Braden, David A. Shull and Levi
Pettit, upon a judgment note under seal, dated July 2, 1889,
executed by the defendant Braden as principal, and by the de-
fendants Shull and Pettit as sureties, for the sum of $4,000.

On January 14, 1890, upon petition of said Shull and Pettit
praying that the judgment be opened as to them and that they
be let into a defence, the court, EWING, J., granted a rule to
show cause why the prayer of the petitioners should not be
granted. The averments of the petition were to the effect that
at the time the note was given, the defendant Braden was vice-
president of the plaintiff bank, W. T. Lantz was cashier there-
of, and A. I. Lindsey assistant cashier; that all three of these

Statement of Facts.

officers had very largely overdrawn their accounts in said bank, without authority so to do; that the board of directors, of which said Braden and Lantz were members, had knowledge of said overdrafts and knew that Braden and Lantz were insolvent, but retained and continued them in their respective positions, to enable and aid them to obtain the signatures of responsible sureties to notes which were to be delivered to said bank and held and collected by it for the purpose of replacing the moneys so taken out of the bank by said Braden and Lantz; that the note in question in this case was signed by the petitioners upon the false and fraudulent representation, made to them by Braden, that he wanted to borrow $4,000 from the bank for use in his business, and that the note was made for that purpose, whereas it was designed and was used to secure the bank for the overdraft of Braden; that the directors of the bank suppressed and concealed the facts of such overdraft and of Braden's insolvency from the petitioners, who were unaware thereof; that the said representations by which their signatures were secured, were made to them with the knowledge and assent of said directors, and the petitioners would not have signed the note but for the fraudulent representations so made.

Judgment having been entered to No. 105 April Term 1890, of the court below, in favor of the same plaintiff against William B. Rhodes, A. I. Ankrom and D. W. Braden, upon a judgment note dated September 14, 1889, for $5,000, the defendant Rhodes, on April 4, 1890, filed a petition averring that said note was given in renewal of a prior note of the same kind and amount, dated about March 11, 1889; that said notes were signed by the petitioner as surety of said Braden, and that said original note was procured from the petitioner by Braden, at the instance of the bank, under circumstances stated substantially as in the petition of Shull and Pettit, supra, except that, in place of the averments in that petition respecting representations as to the purpose of the note, this petition averred that "it was understood that the said Braden was to have the proceeds" of this note, but that it was taken by the bank as collateral security for an existing overdraft. A rule to show cause why the judgment should not be opened, etc., was thereupon granted and issued.

Statement of Facts.

To No. 328 January Term 1890, of the court below, judgment was entered in favor of the same bank against W. T. Lantz, D. A. Spragg and Isaac Yeager, upon a judgment note dated August 21, 1889, for $4,500. On April 3, 1890, the defendant Yeager obtained a rule to open the judgment, upon a petition averring that the note, when signed by the petitioner, was drawn for the sum of $500, and that it was afterward fraudulently altered to $4,500, without petitioner's knowledge or consent, by W. T. Lantz who was the principal obligor and also cashier of the plaintiff bank; that in pursuance of a fraudulent collusion between said Lantz and the directors of the bank, the former procured the petitioner's signature to said $500 note, as a surety thereon, under circumstances stated substantially as in the foregoing petitions, mutatis mutandis.

Each of the said several petitions having been answered by the plaintiff bank, and issue having been joined by replications to the answers, testimony was taken by the several petitioners and the plaintiff respectively, which it was agreed should be considered in each of the cases so far as applicable thereto.

After hearing and argument, the court, EWING, J., found, inter alia, that when the original Rhodes note was discounted, none of the other directors except Lantz, knew that the proceeds were to go to Braden's use, it being supposed that the discount was for the benefit of Rhodes; that this note was not procured for the purpose of paying overdrafts, but for Braden's general use, though, as the proceeds of the discount were deposited to his credit on his individual account, the necessary effect was to pay an overdraft which then existed in that account of nearly $2,800; that overdrafts in other accounts kept by Braden as treasurer of certain companies engaged in the cattle business in the west, still existed, and his individual account again became overdrawn to the amount of between $200 and $300, and the Shull and Pettit note was procured and discounted for the purpose of paying his overdrafts, though the whole of its proceeds were not actually so applied; that, at that time, the existence of these overdrafts was not known to any of the directors except Braden and Lantz, but general directions to have overdrafts settled had been given to the cashier, and this note was procured by Braden in consequence thereof; that

the directors did not send him to the sureties to procure it, and had no notice of the representations by which he procured their signatures; that down to the time when it was discounted and afterwards, he was supposed by the other directors, and was generally believed in the community to be a man of wealth; and it was not until November, 1889, that the insolvency of himself and Lantz, which was caused by their business ventures and speculations in the west, became apparent; that Lantz was generally regarded, before that, as able to pay all his debts, though some persons, among them some directors of the bank, seemed to have entertained doubts of his entire solvency, without, however, having anything like definite knowledge on the subject; that the allegations of Yeager as to alteration of the amount of the note signed by him as surety for Lantz were overwhelmingly disproved; that said note was not procured at the instance of the bank, but was obtained by Lantz, acting for himself and not for the bank, and when discounted its proceeds were applied to pay another note which had been carried for two or three years; that two of the directors were sureties upon the note thus paid, but, even if they sought relief in this manner, it was in their individual capacities and not in discharge of their duties as directors; that none of the notes in question in these cases were procured by collusion between the bank and the principal debtors, but they were all discounted in good faith in the usual course of business.

Finding further that the facts aforesaid did not exhibit defences to the respective notes in question, the court discharged the rules to open the judgments; whereupon the several petitioners took these appeals, assigning for error, inter alia, the decrees of the court discharging said rules.

*Mr. A. A. Purman* for Shull and Pettit, appellants in No. 142.

*Mr. J. B. Donley* (with him *Mr. P. A. Knox*), for the appellee.

Nos. 150 and 151 were submitted without oral argument by *Mr. James E. Sayers*, for Isaac Yeager and William B. Rhodes, the respective appellants, and *Mr. J. B. Donley* and *Mr. P. A. Knox*, for the appellee.

BANK V. BRADEN ET AL.

PER CURIAM:

This was an appeal by the defendants David A. Shull and Levi Pettit, from the refusal of the court below to open the judgment and let them into a defence. The judgment was entered against them and in favor of the bank by the prothonotary of Greene county, by virtue of an authority contained in a joint and several note for $4,000, dated July 2, 1889, and signed by the defendants, together with one Daniel W. Braden. The defence, briefly stated, was that the appellants were sureties for Braden ; that at the time the note was given, Braden was an officer of the bank, had largely overdrawn his account, and was, in fact, insolvent; that several other persons had also overdrawn their accounts, making the aggregate of such overdrafts about sixty thousand dollars ; that the note in question was given as the result of a conspiracy between the bank and those of its depositors or customers whose accounts were overdrawn, to get notes from responsible parties to make good such overdrafts; that the bank concealed from the appellants the fact of Braden having overdrawn his account; that, had they known of it, and of his insolvency, they would not have signed the note, etc. To sustain these allegations, the appellants took a large amount of testimony, covering several hundred printed pages. The learned judge below found all the essential facts against the appellants, and refused to open the judgment, from which refusal this appeal was taken.

A careful examination of the testimony leads us to the same result. The note was taken by the bank in the usual course of business, was discounted, and the proceeds placed to Dr. Braden's account. At that time he was in good credit, and was supposed by both the appellants and the bank to be a wealthy man. Both were mistaken in this. He had become involved, with a number of others, in some western enterprises which proved disastrous. The bank at that time had no reason to anticipate a loss through him, and, had it known of his impaired credit, was not bound to proclaim such fact upon the streets, nor communicate it to these appellants. The latter made no inquiry at the bank of its condition or the state of Braden's account, nor is it likely they would have obtained any information upon either subject in that way. No well-

conducted bank makes public its own affairs or those of its customers. In many instances it would be injurious to both to do so. It is clear, however, that the appellants were not deceived in any way by the bank. It had no interest in the speculations in which Braden and his friends were engaged. It merely loaned him money, as it would have done to any other person furnishing adequate security.

The allegation that there was a conspiracy on the part of the bank officers to get notes to make the overdrafts good, does not require discussion. It is not sustained by the evidence. It is very evident that Dr. Braden was himself deceived at the time the note was given, and regarded himself as a solvent, if not a rich man. But the time arrived for the bubble to burst, and, as is always the case in such instances, innocent persons are hurt. In this case it was the appellants.

> The decree is affirmed, and the appeal dismissed at the costs of the appellants.

### BANK v. LANTZ ET AL.

PER CURIAM:

The above cases are on all fours with Bank v. Braden et al., just decided. The same testimony was heard in each. There are no essential points of difference. We therefore enter similar judgments.

> The decree is affirmed in each case, at the costs of the appellants, and the appeal dismissed.