## Court Vesper No. 69, Foresters of America, *v.* Fries, Appellant.

*Principal and surety—Beneficial association—Treasurer.*

Under the by-laws of a beneficial association, the treasurer was allowed to have in his possession a sum not exceeding $300. He was required to give a bond for the faithful performance of his duties in the sum of $300. This bond was given, but subsequently it was discovered that the treasurer had in his hands a sum much exceeding the amount of the bond. The association made demand for a new bond, and this demand was acceded to by his giving a second bond in the sum of $1,000. The surety on the sec-

ond bond was a member of the council of the association, and had the same knowledge of the finances of the association as the other officers. He was not urged by any of the officers of the association to become surety, and was not specially informed by them as to the condition of the treasurer's financial affairs or accounts. The evidence showed that the treasurer had more than sufficient to his credit in his bank account in which he had mingled the association's money, after the bond was signed, to pay the entire amount found due from him at the final settlement. *Held*, that a verdict and judgment against the surety should be sustained.

Argued Oct. 17, 1902. Appeal, No. 124, Oct. T., 1902, by defendant, from judgment of C. P. No. 4, Phila. Co., Sept. T., 1902, No. 759, on verdict for plaintiff in case of Court Vesper No. 69, Foresters of America, v. Reuben G. Missimir and Irwin A. Fries. Before RICE, P. J., BEAVER, ORLADY and W. D. PORTER, JJ. Affirmed.

Assumpsit upon a bond of suretyship. Before AUDENRIED, J. The facts are stated in the opinion of the Superior Court.

At the trial defendant presented the following points, none of which were read to the jury, and all of which were refused.

1. Under the conditions of the bond given by the defendant to the plaintiff, he is liable to the plaintiff for moneys actually received by Missimir, the treasurer, after the execution and delivery of the bond only, and not for moneys already in his hands at and before that time. [1]

2. If the jury believe that Missimir, the treasurer, paid to the plaintiff, or upon its order, between October 11, 1900, and December 10, 1900, a sum in excess of what came into his hands as treasurer of the court between the same dates, then the defendant is not liable, the plaintiff cannot recover, and the verdict must be for the defendant. [2]

3. If the jury believe that the chief ranger and trustees of the plaintiff, or either of them, knew that Missimir, the treasurer, had the funds of the plaintiff invested in his business at the time this bond was executed by the defendant, and this knowledge was not communicated to the defendant at that time, the plaintiff cannot recover, and the verdict must be for the defendant. [3]

4. If the jury believe that Missimir, the treasurer, had the plaintiff's funds invested in his business at the time of the

execution of the bond, and that the plaintiff or its proper offi-
cers knew that fact, there is no consideration for this bond,
the plaintiff cannot recover, and the verdict must be for the
defendant. [4]

5. Under all the evidence the verdict must be for the de-
fendant. [5]

Plaintiff presented this point:

3. Even though the jury believe that Missimir, the treasurer,
was insolvent at the date of the execution of the bond, or that
he had made use of the funds in his business, nevertheless the
verdict must be for the plaintiff, unless the plaintiff knew of
such insolvency or embezzlement and concealed the knowledge
from the defendant. *Answer:* Affirmed. [6]

The court charged, inter alia, as follows:

[Whether Missimir owed $803.40, it seems to me depends
entirely upon your answer to the question, How much cash
did he have actually on hand or in his control, or if not cash
then how much was the value of the property or investments
representing that cash which Missimir controlled on the day
the bond was executed?] [7]

[Mr. Missimir, however, testified yesterday that he had ac-
tually put the money of the association which he held into a
stock of tobacco that he carried in his store, and that he carried
that tobacco investment of the society's money just as he would
carry money in bank or invest it in bonds or something of that
kind. . . . If this story of Mr. Missimir is true, that is to say,
if this money was invested in a stock of tobacco, he was just
as much bound to account to the society for that tobacco or its
value as he would be if he had the money in his hands in dol-
lars or half dollar pieces.] [8]

Verdict and judgment for plaintiff for $869.44. Defendant
appealed.

*Errors assigned* were (1–8) above instructions, quoting them.

*John W. Speckman,* for appellant.—There was no considera-
tion, for the bond in question.

The surety is not liable for a default of the treasurer prior
to the excution of the bond: Beyerle v. Hain, 61 Pa. 226;

Second Ave. R. R. Co. v. Coleman, 24 Barb. (N. Y.) 300; Com.
v. West, 1 Rawle, 29; Bank of Washington v. Barrington, 2 P.
& W. 27, 45; County of Pine v. Willard, 39 Minn. 125 (39 N.
W. Repr. 71); Van Sickle v. Buffalo Co., 13 Neb. 103 (13 N.
W. Repr. 19); City of Detroit v. Weber, 29 Mich. 24; Roch-
ester v. Randall, 105 Mass. 295; Kellum v. Clark, 97 N. Y.
390; State v. Jones, 89 Mo. 470 (1 S. W. Repr. 355).

The surety was not liable for the stock of tobacco into which
his principal had, without authority, converted the assets of
the society before the assumption of the suretyship.

*Michael J. Ryan*, with him *Thomas McFarland*, for appellees,
cited: De Hart v. McGuire, 10 Phila. 359; Beyerle v. Hain,
61 Pa. 226; Wayne v. Commercial National Bank, 52 Pa. 343;
Farmers', etc., National Bank v. Braden, 145 Pa. 473.

OPINION BY BEAVER, J., February 11, 1903:

Plaintiff, a beneficial organization, seeks to recover from the
surety of its treasurer a bond, the conditions of which only are
printed in the appendix.    Whether there were any recitals in
the bond which would help us to reach a conclusion as to its
scope and character, we cannot say, having nothing but the con-
dition to guide us in our investigation and interpretation.

Under the by-laws of the plaintiff association, the duties of
the treasurer are set forth and it is provided therein that " he
shall be allowed to have in his possession a sum not exceeding
$300.    He shall, before his installation, give a bond with se-
curities for the faithful performance of his duties in the sum
of $300, to be approved," etc.    The regular bond, required by
the by-laws, had been given after the treasurer's election for
the then current year.    It was discovered, however, after this
bond had been given, that the treasurer had in his hands, due
to the association, a sum much exceeding the amount of the
bond, and it would appear from the testimony that in some way
the plaintiff made demand for a new bond to cover the excess
over and above the amount of the regular treasurer's bond.
Upon this bond in the sum of $1,000, the defendant became the
surety.    He was a member of the council of the plaintiff asso-
ciation and, so far as the testimony disclosed, had, at the least,
the same knowledge of the finances of the institution as other offi-

cers of the association.   The treasurer gave him special information in regard to the condition of the funds in his hands, telling him, as the treasurer admits in his testimony: " I calculate to be $100 or $200 short."   The defendant was not urged by any of the officers of the association to become surety and, so far as we are able to gather from the testimony, was not informed specially by them as to the condition of the treasurer's financial affairs, outside the fact of .the balance in his hands due the court.

In the settlement of his accounts it was discovered that the treasurer had in his hands $1,297.23.   This balance was ascertained by an audit of the books, the witnesses stating that they had the report of the treasurer and his word in regard to the money being in his hands.   The bond was given under these circumstances and conditioned " that, if the above bounden Reuben C. Missimer shall and will from time to time and at all times hereafter, for and during the above mentioned term of office, and for and during any one or more subsequent terms for which he may hereafter be elected treasurer of the said Court Vesper No. 69, Foresters of America, and until he shall deliver all the property which he may have received as such treasurer to his successor in office or to such other person or persons as said court, etc., or its authorized officers may direct, well and faithfully perform and discharge all and singular the duties now required or that may hereafter be required of him, as treasurer aforesaid . . . . and shall and do pay and deliver over to his successors in office, or to such other person or persons as said Court Vesper No. 69, Foresters of America, or its authorized officers, may direct, all such balances or sums of money, goods and chattels and other things which shall appear to be in his hands and due from him to the said Court Vesper .No. 69, Foresters of America, then this obligation to be void ; or else to be and remain in full force and virtue."

The appellant defends upon several grounds :

That there was no contract between him and the plaintiff, inasmuch as the plaintiff did not demand an additional bond, and that, therefore, he was not liable thereon.   It appears, however, from the testimony, that the defendant was aware that a bond was required by the plaintiff and communicated the fact to the treasurer for whom he became surety but

whether that be so or not, when the bond was delivered and accepted by the plaintiff, that of itself constituted a contract based upon a sufficient consideration.

The defendant also claims that misrepresentations were made in regard to the condition of the treasurer's affairs known to the members of the plaintiff organization and not known to him, and that these representations constituted a fraud upon him which relieves him from any obligation under the bond. This is not borne out by the testimony. On the other hand, it is plainly apparent that the defendant had a more complete knowledge of the affairs of the treasurer than the officers of the court whose duty it was to audit the accounts of the treasurer.

It is also claimed that, inasmuch as the by-laws provide that the treasurer shall have in his posession a sum not exceeding $300, and a bond in that amount had been given, as required by the by-laws, that the surety is not bound; but the additional bond was taken for the very reason that the treasurer had in his possession or was at least accountable for a larger sum than is fixed by the limitation in the by-laws. In addition to this, the by-laws were made for the purpose of regulating the duties of the treasurer and the provision therein was made with reference to the safety of the court and not for the benefit of the sureties of the treasurer. All this was known to the defendant who was also apprised of the fact that he joined in the additional bond of the treasurer for the very reason that the amount in his hands exceeded the amount allowed to remain there by the provisions of the by-laws. See Pittsburg, etc., Railway Co. v. Shaeffer, 59 Pa. 350.

It is also claimed that it was the duty of the plaintiff to have notified the defendant of the condition of the plaintiff's accounts, but, as we have already seen, he was quite as familiar with the accounts as were the other officers of the plaintiff association and, in addition thereto, he further had knowledge of the treasurer's personal affairs, acquired from the treasurer in view of his becoming surety. In Wayne v. Commercial National Bank, 52 Pa. 343, Mr. Justice THOMPSON said: "I know of no positive duty resting on the officers of the bank to investigate, with a view to informing a surety, in the absence of an inquiry or request by him so to do. Had such a request been made and it had been denied or evaded, a different question might have

been presented, but it was not." No question of the solvency of the treasurer seems to have been raised or thought of, until long after the bond was given. Indeed, according to his testimony, he was not only not insolvent but demonstrated the fact that he was not so to his surety, the defendant, before the bond was executed. See also Farmers', etc., National Bank v. Braden, 145 Pa. 473; Lauer Brewing Co. v. Riley, 195 Pa. 449.

The treasurer seems to have kept no separate bank account, as such. He mingled the funds derived from his business and those received as treasurer in a common bank account, drawing upon it for funds as the necessities of his business or the drafts upon the treasury required. He testifies, as the defendant's witness: " Q. After the time the bond was signed, the moneys that came in from time to time, how were they used? A. Sometimes I had money in bank. I done a big business; I had money in bank; sometimes I had money in the safe. I have had as high as $900 or $1,000 in bank—the City Trust Company. I cannot give you the dates. Q. That was prior to the time the bond was signed? A. It was before the bond was signed and after I think." It would seem, therefore, that the treasurer had more than sufficient to his credit in bank after the bond was signed to pay the entire amount found due from him at the final settlement. Under these circumstances, the question as to the defendant's liability turned largely upon what the court said—which is alleged for error in the seventh specification—" Whether Missimer owed $803.40, it seems to me depends entirely upon your answer to the question, how much cash did he have actually on hand or in his control? or, if not cash, then how much was the value of the property or investments representing that cash which Missimer controlled on the day the bond was executed?" The verdict of the jury, justified by the evidence, establishes the fact that the treasurer had in hand or in cash, or in property or investments representing cash, more than sufficient to pay the amount due to the court at the time the bond was signed.

In view of the peculiar circumstances of the case, we see nothing erroneous in the portion of the charge complained of in the eighth specification of error. The only testimony in regard to the investment of the money in the stock of tobacco carried by the treasurer was his own. The court left it to the

jury to say whether or not that story was true but that, if true, "the treasurer was just as much bound to account to the society for the tobacco or its value as he would be, if he had the money in his hands in dollars or in half dollar pieces." We cannot see that this was erroneous, particularly in view of the fact that the treasurer further testified that he informed his surety that "there is enough stock (tobacco) in the cellar to secure you," thus showing—if the jury believed this—that the appellant not only knew what was the basis of his security, but accepted it as such.

We see nothing erroneous in the refusal of the court to answer the defendant's points or in the answers given to those of the plaintiff.

The specifications of error are all overruled and the judgment is affirmed.